UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REGINA KARASIK-TOSK,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,<br><br>Defendant. | Case No.   24-cv-03108-EJD<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR VOLUNTARY REMAND**<br><br>Re: ECF Nos. 11-1, 15 |

Plaintiff Regina Karasik-Tosk appeals the Commissioner of Social Security's[1] final decision denying disability insurance benefits under Title II.  Karasik-Tosk seeks an order remanding the action for award of benefits for the disputed time period from November 14, 2013 through November 10, 2015.  Mot., ECF No. 11-1; Reply, ECF No. 17.  In his cross-motion, the Commissioner agrees that remand is appropriate but opposes the award of benefits.  Opp., ECF No. 15.

Having considered the parties' briefing and the record in this matter, the Court DENIES Plaintiff's motion for summary judgment to the extent she seeks an instruction to award benefits and GRANTS the Commissioner's cross-motion to remand for further proceedings.

I.  **BACKGROUND**

A.  **Medical History**

Karasik-Tosk alleges disability beginning on November 14, 2013 based on a combination of impairments including degenerative disk disease, fibromyalgia, arthritis of the hip, migraines,

---

[1] The Current Commissioner, Leland Dudek, is automatically substituted as defendant in place of his predecessor.  Fed R. Civ. P. 25(d).

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

1

and depression. Tr. of Admin. Record ("Tr.") 254, ECF No. 6. Her symptoms began as early as 2010, when she was treated for migraine, fibromyalgia symptoms, depression, bilateral hip pain, and lower back pain. *Id.* at 359–60. Since then, Karasik-Tosk has been treated for chronic pain across many parts of her body and other ailments, engaged in successful and unsuccessful bouts of physical therapy, and had numerous medical evaluations. *See* Mot. 6–10 (recounting her extensive medical history).

In November 2013, near the beginning of the disputed time period, Karasik-Tosk began treatment for right shoulder and neck pain. Tr. 371. She received treatment for depression and bilateral foot pain and tingling in the same month. *Id.* at 385–86. In 2014, she began to have worsening burning pain in her legs and feet, which was associated with her history of chronic low back pain. *Id.* at 457. In late-2014 and through 2015, Karasik-Tosk received multiple treatments for hip and knee pain from mild degenerative joint disease, and several doctors opined that she suffered from chronic depression. *Id.* at 494, 586, 1111–12, 1623. At several points during the disputed period, Karasik-Tosk also reported suffering from migraines and fibromyalgia symptoms. *Id.* at 97, 435, 492, 509.

### B.  Procedural History

On April 9, 2014, Karasik-Tosk filed her application for disability insurance benefits under Title II of the Social Security Act. *Id.* at 21. Her application alleged an onset of disability ("AOD") on September 29, 2010, but at her first hearing before an administrative law judge ("ALJ"), Karasik-Tosk amended the date to January 1, 2014. *Id.* On April 29, 2016, the ALJ issued an unfavorable decision. *Id.* at 36. The Appeals Council denied review, *id.* at 1–6, and Karasik-Tosk appealed the Commissioner's decision to this Court. *See id.* at 1836–37. On March 11, 2019, the Court remanded the action to the Commissioner for further proceedings after granting in part and denying in part Karasik-Tosk's summary judgment motion and the Commissioner's cross-motion. *Id.* at 1838–64.

On March 2, 2020, a different ALJ issued a partially favorable decision finding Karasik-Tosk disabled as of November 11, 2015. *Id.* at 1730. Karisk-Tosk filed another action in this

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

2

Court appealing the second ALJ's decision to exclude the period of time before November 11, 2015 from the finding of disability. On March 31, 2022, the Court remanded the action to the Commissioner again for further proceedings. *Id.* at 5963–75.

During the hearing on March 20, 2024, Karasik-Tosk amended her AOD for the second time to November 14, 2013, because she had been engaged in substantial gainful activity through her employment as a caregiver before that date. *See id.* at 5881. The third ALJ ("ALJ Kelsey") found that Karasik-Tosk was not disabled for the disputed period between November 14, 2013 and November 10, 2015, and this decision became the Commissioner's final order. *Id.* at 5900. Before the Court is Karasik-Tosk's request for review of ALJ Kelsey's finding of no disability for the disputed period.

## II.  LEGAL STANDARD

The parties agree that remand is appropriate in this case. However, they disagree whether the remand should be for further proceedings or an immediate award of benefits. Opp. 1. So, the question here is whether this case presents the "rare circumstances" under which remand with an award of benefits is warranted. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Id.* (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).

The applicable standard, known as the credit-as-true rule, proceeds in three sequential steps. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). First, the court determines whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1020). Next, the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Dominguez*, 808 F.3d at 407 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). If the first two conditions are satisfied, the court may credit the discredited testimony as true to decide "whether, on the record taken as a

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.
3

whole, there is no doubt as to disability." *Leon*, 880 F.3d at 1045 (citation omitted). Even if all three requirements are met, however, courts retain flexibility in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Dominguez*, 808 F.3d at 408 (citations omitted).

## III. DISCUSSION

Karasik-Tosk contends that ALJ Kelsey committed several errors in denying social security benefits: (1) the ALJ improperly discounted aspects of Karasik-Tosk's testimony; (2) the ALJ erred in translating the opinions of two state agency psychologists into relevant residual functional capacity (RFC) limitations for the vocational witness; (3) the ALJ identified occupations at step five that were inconsistent with Karasik-Tosk's RFC; (4) the ALJ improperly discounted aspects of medical opinion evidence; and (5) the ALJ posed incomplete hypothetical questions to the vocational witness. At the outset, Karasik-Tosk's last argument is derivative of and dependent on her other claims, so the Court need not consider it separately. The Court turns to Karasik-Tosk's other arguments within the credit-as-true framework.

### A. Legally Sufficient Reasons for Rejecting Evidence

Karasik-Tosk contends that the ALJ improperly rejected aspects of her subjective testimony and the medical opinions of Drs. Galina Balon and Patti Allen. Mot. 15–17, 21–23. While not conceding so, the Commissioner does not dispute that the ALJ erred in discounting such evidence. Instead, the Commissioner argues that any error is evidence that the record is not free from conflicts and ambiguities, so Karasik-Tosk's appeal fails at the second step of the credit-as-true analysis. Opp. 4. In light of this posture, the Court touches on Karasik-Tosk's claims before exploring them more fully at the second credit-as-true element.

#### 1. Claimant's Subjective Testimony

In assessing a claimant's subjective testimony regarding her symptoms, an ALJ must first determine whether the claimant has presented objective evidence of medically supported impairments that could cause her symptoms. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir.

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

2024). If the claimant has done so and there is no evidence of malingering, the ALJ may reject the claimant's subjective testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons." *Id.* An ALJ may properly discount a claimant's subjective pain testimony "by identifying specific discrepancies between her testimony and the objective medical evidence." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . . The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* at 499.

Here, it is undisputed that Karasik-Tosk has presented objective medical evidence of underlying impairments that could produce the alleged symptoms. ALJ Kelsey also cited no evidence of malingering. However, ALJ Kelsey points to Karasik-Tosk's description of her daily activities and the objective medical findings in the record as being inconsistent with the allegations of disabling symptoms and limitations. Tr. 5889. In her opinion, ALJ Kelsey listed the inconsistent evidence at length, citing specific portions of the record. *Id.* at 5889–97. Then, she explained why such inconsistencies undercut Karasik-Tosk's claims concerning the severity of her limitations. *Id.* at 5897 ("Accordingly, the evidence of record during this period is not supportive of the degree of the claimant's allegations asserted before the end of this period, where all agree she was disabled . . . Specifically, the undersigned considered the claimant's testimony that she stated she could only sit for 35 minutes, even though treatment notes indicated that the claimant reported that her pain was better with sitting."). Given the ALJ's extensive analysis, the Court doubts that the ALJ failed to meet the clear and convincing standard, as Karasik-Tosk claims. But because the Commissioner does not directly dispute that the ALJ erred, this issue is better addressed under the second credit-as-true element in tandem with the Commissioner's arguments in opposition.

### 2. Medical Opinions

Karasik-Tosk asserts that the ALJ improperly discounted the opinions of Drs. Balon and Allen. Mot. 21–23. This is not a new theory; Karasik-Tosk made the same argument in her case

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.
5

before Judge Beth Labson Freeman in 2019 and again before Magistrate Judge Joseph Spero in 2022. *See* Tr. 5970–73; 5989–93. In the latter case, Judge Spero applied the law of the case doctrine to bar Karasik-Tosk from relitigating whether the second ALJ erred in his treatment of Drs. Balon and Allen's opinions, an issue that had already been decided by Judge Freeman against Karasik-Tosk. *Id.* at 5973; *see Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."). Judge Spero found that Karasik-Tosk's challenge to the second ALJ's rejection of these medical opinions was nearly identical to the one already addressed by Judge Freeman, and therefore squarely within the law of the case. Tr. 5972.

So too here. Karasik-Tosk does not cite any new evidence in the record that would lead to a different result or argue that any other exceptions to the doctrine apply. The Court follows Judge Spero's well-reasoned application of the law of the case doctrine and finds that this issue has already been decided against Karasik-Tosk not once, but twice. Accordingly, Karasik-Tosk fails to establish that ALJ Kelsey erred by discounting Drs. Balon and Allen's opinions and the Court will not credit them as true.[2]

### B.   Fully Developed Record

As noted above, the Commissioner frames the alleged errors by the ALJ as evidence that the record contains conflicts and ambiguities, requiring remand for further proceedings to resolve these issues. Opp. 4. Karasik-Tosk counters that further proceedings would serve no useful purpose, as all relevant evidence is in the record and any remaining issues stem from ALJ Kelsey's errors. Reply 3, 6. Once credited as true, the discounted testimony and medical opinions would resolve any outstanding issues and clear the way for an award of benefits. *Id.* at 4–5.

As a threshold matter, Karasik-Tosk's argument misconstrues the credit-as-true test. Rejecting a similar argument, the Ninth Circuit explained that courts are required "to assess

---

[2] This holding is not intended to limit the Commissioner's discretion to reconsider the significance of these doctors' opinions on remand if he so chooses or if new evidence warrants a different outcome. *See R.K.T. v. Kijakazi*, No. 20-CV-03101-JCS, 2022 WL 976979, at *7 n.9 (N.D. Cal. Mar. 31, 2022).

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

6

whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (citations omitted).

Accordingly, the Court now considers the ALJ's alleged errors to determine whether which, if any, present conflicts or ambiguities in the record that preclude credit-as-true treatment.

### 1. Claimant's Subjective Testimony

In conducting its review of the record to determine whether it is fully developed, "the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (cleaned up).

The Commissioner initially observes that there are many normal findings in the objective medical evidence that are indicative of non-disability. Opp. 4–5. For example, neurological examinations throughout the disputed time period found that Karasik-Tosk exhibited normal strength, gait, reflexes, and coordination. *See* Tr. 460 (November 2013 examination), 511 (August 2014 examination), 589 (February 2015 examination), 1027 (July 2015 examination). Imaging revealed that Karasik-Tosk had mild arthritis in her left hip and minimal pathology in the knees, but doctors advised her to perform aerobic exercise instead of undergoing surgery. *Id.* at 6211–12.

There are also factual conflicts between Karasik-Tosk's testimony and objective medical evidence. In October 2014, Dr. Alicia Blando reviewed Karasik-Tosk's medical record and found that she could sit for six hours in a workday with no other additional sitting limitations. *Id.* at 99. Half a year later, Dr. D. Haaland made the same findings after reviewing an updated medical record. *Id.* at 116. Notably, in August 2015, Karasik-Tosk reported that sitting down actually alleviated much of her pain. *Id.* at 1116. These findings conflict with Karasik-Tosk's alleged inability to sit for longer than 35 minutes and raise serious questions regarding the true severity of her impairment during the disputed period. Accordingly, the ALJ's alleged error in discounting Karasik-Tosk's testimony cannot form the basis of a remand for award of benefits.

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

7

### 2.  **Translating Opinions of State Agency Psychologists**

Karasik-Tosk next claims that ALJ Kelsey failed to translate the limitations assessed by psychologists Drs. Timothy Schumacher and Dara Goosby into terms that the vocational witness could address when testifying as to available occupations.  Mot. 17–19.  Specifically, Karasik-Tosk argues that the distinction of what type of supervision Karasik-Tosk could receive—i.e., critical versus constructive supervision—is not a meaningful workplace limitation.  *Id.*

In forming her hypothetical to the vocational witness, ALJ Kelsey pulled directly from the RFC limitation that Karasik-Tosk "should not experience 'critical' [versus] 'constructive criticism' from supervisors as part of the job."  Tr. 5887.  The ALJ based this RFC limitation on the opinions of Drs. Schumacher and Goosby, who wrote that "stress from close interactions with the general public and from critical supervision aggravates [Karasik-Tosk's] mood symptoms."  *Id.* at 104, 120.  ALJ Kelsey explained that the distinction between critical and constructive criticism stemmed from her interpretation of this narrative opinion.  *Id.* at 5898 ("Notably, the undersigned notes that [Drs. Schumacher and Goosby] specified that the claimant could still engage in routine contacts with coworkers and employers; thus, indicating that the claimant could have normal supervision, i.e., constructive criticism rather than 'critical' supervision, with the term 'critical' indicating a response that is more critical than normal supervisory levels.").  Thus, the main thrust of Karasik-Tosk's argument is that the ALJ did not properly "translate" the psychologists' opinions into the RFC limitation and the resulting hypotheticals.  As the Commissioner notes, however, translating medical opinions into concrete RFC limitations is a task reserved to ALJs.  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).  Any error by ALJ Kelsey in translating the psychologists' opinions regarding critical supervision or ambiguity resulting from such error supports remand for further proceedings, not an award of benefits.

### 3.  **Inconsistent Step Five Findings**

Karasik-Tosk's remaining argument fares no better.  At step five, ALJ Kelsey found that Karasik-Tosk would be able to perform the requirements of Marker/Pricer, Inspector/Hand

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

8

1  Packager, and Routing Clerk. Tr. 5899. These three jobs require a GED Reasoning Level of Two,

2  meaning that they require the employee to "[a]pply commonsense understanding to carry out

3  detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles, App. C §

4  III (4th ed. 1991), 1991 WL 688702. Karasik-Tosk contends that these jobs are inconsistent with

5  her RFC, which included a limitation that Karasik-Tosk "can understand, remember, and carry out

6  simple instructions, *but not detailed ones*." Tr. 5887 (emphasis added). At the hearing and in her

7  opinion, ALJ Kelsey rejected Karasik-Tosk's argument that ALJs are required to consider the

8  GED reasoning levels of jobs offered by vocational experts, citing new guidance in Social

9  Security Emergency Message EM-21065 REV (effective December 5, 2023). *Id.* at 5900. The

10 Emergency Message advises that the agency does not consider GED ratings.[3] Karasik-Tosk

11 argues that the ALJ erred in not considering the GED ratings of jobs offered by the vocational

12 witness because the Emergency Message is not binding on adjudicators and contrary to Ninth

13 Circuit case law. Mot. 20.

14     The Court need not reach that issue here. A conflict between the RFC and step-five

15 evaluation supports further proceedings to resolve the issue, not an award of benefits. *See Rounds*

16 *v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003–04 (9th Cir. 2015). Karasik-Tosk's argument

17 also fails to the extent she takes issue with ALJ Kelsey's formulation of the RFC itself. It is the

18 ALJ's discretion, not the Court's, to determine how impairments affect the formulation of a

19 claimant's RFC. *See* 20 C.F.R. § 416.927(d)(2); *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir.

20 2015). As a final measure, Karasik-Tosk urges the Court not to allow a third "fruitless" remand

21 for further proceedings, likening her story to the claimant's in *Benecke v. Barnhart*. 379 F.3d 587

22 (9th Cir. 2004). But in *Benecke*, the claimant's "entitlement to disability benefits [was] clear." *Id.*

23 at 596. Not so here. There are significant conflicts in the record that require further proceedings

---

[3] The URL to EM-21065 REV (https://secure.ssa.gov/apps10/reference.nsf/links/10292021113305AM) currently leads to a 404 error. The Court instead refers to ALJ Kelsey's quoting of the Emergency Message in her opinion. Tr. 5900 ("SSA does not consider . . . GED ratings. These ratings do not correspond to SSA's regulatory definitions of unskilled, semiskilled, and skilled work.").

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.

9

1 to resolve.

2 Because the second factor is not met, the Court declines to credit as true any discounted
3 evidence and finds that a remand with an award of benefits is not the proper remedy in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Karasik-Tosk's motion for summary judgment to the extent she seeks an instruction to award benefit and GRANTS the Commissioner's cross-motion to remand for further proceedings. The case is hereby REMANDED to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: May 6, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-03108-EJD
ORDER DENYING MOT. FOR SUMM. J.
10